Argued and submitted August 2, appeal dismissed for lack of appealable judgment December 13, 2006, petition for review denied February 21, 2007 (342 Or 416)

In the Matter of
Alexis Danielle Jenkins,
aka Alexis Danielle Huntley;
Samantha Diane Nicole Jenkins,
aka Samantha Diane Nicole Huntley;
and Daniel Christian Jenkins, Jr.,
aka Daniel Christian Huntley, Jr.,
Minor Children.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

DANIEL CHRISTIAN JENKINS,
*Appellant.*

2004-812661, 2004-812662, 2004-812663;
A131356

149 P3d 324

Scott W. Lee argued the cause and filed the briefs for appellant.

Elizabeth A. Gordon, Assistant Attorney General, argued the cause for respondent. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Robin L. Wolfe and Bertoni & Todd filed the brief for minor children.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge, and Huckleberry, Judge pro tempore.

EDMONDS, P. J.

**EDMONDS, P. J.**

Father appeals from a judgment terminating his parental rights to his three children and makes four assignments of error, including the assertion that the trial court erroneously refused to appoint an attorney to represent him for purposes of the termination proceeding. We dismiss his appeal because we conclude that the judgment from which father appeals is not appealable. ORS 19.245(2).

The judgment terminating father's parental rights, dated January 19, 2006, recites that father "was personally served with notice of this proceeding on November 1, 2005," at the address on the summons and was not present in the courtroom on January 19, 2006. The record of the January 19 hearing reveals that father did not appear, although a summons served on him at the Twin Rivers Correctional Institution, where father was incarcerated, directed him to appear "on the 19th day of January, 2006 at 9:00 o'clock am" before Judge Welch at Juvenile Court, 1401 NE 68th Avenue, in Portland, Oregon. The summons also informed him about the following:

> "A petition has been filed to terminate your parental rights under ORS 419B.500, 419B.502, 419B.504, 419B.506 or 419B.508. A copy of the petition is attached.
>
> "**You must personally appear at the date, time and location noted above, and you must personally appear at any subsequent court-ordered hearings.** If you do not appear as directed above, or at any subsequent court-ordered hearing, the Court may proceed in your absence, without further notice to you, and terminate your parental rights to the above-named child(ren) either on the date specified in this summons or on a future date, and make such orders and take such action as authorized by law.
>
> "If you appear and contest the petition, the Court will schedule a hearing on the allegations of the petition and order you to appear personally, and may schedule other hearings related to the petition and order you to appear personally."

(Underline and boldface in original.) The reverse side of the summons provides:

> "You have a right to be represented by an attorney in this matter. If you wish to be represented by an attorney, please retain one as soon as possible to represent you in this proceeding. If you cannot afford to hire an attorney and you meet the state's financial guidelines, you are entitled to have an attorney appointed for you at state expense. **To request appointment of an attorney to represent you at state expense, you must contact the Juvenile Court immediately. Phone (503) 988-3463, for further information.**"

(Boldface in original.)

When the hearing on January 19 commenced, an attorney was present who initially announced to the court that he represented father. Observing that father was not present in the courtroom, the court inquired of counsel, "[W]hat do you have to say about your client?" The attorney responded that he was "covering" the hearing for another attorney and that he did not have any information concerning the whereabouts of father. The trial court persisted and contacted father's former attorney by telephone. That attorney had represented father in the other juvenile dependency proceedings involving father's children.[1] That attorney informed the court that he had "been regularly in communication with [father]. I don't know the last time I've spoken to him, and it has been some time." The court responded, "I need more specific information than that. Your client was served November the 4th on the termination petition." The attorney responded that he had not talked with father since father had been served and then related to the court that father had been incarcerated "the entire length of this case" (the dependency proceeding) and that he had had multiple conversations with father. The attorney thereafter requested that he be appointed to represent father in the termination proceeding because "I know [father] opposes [termination]." The court inquired, "[B]ut he hasn't chosen to communicate

---

[1] We understand from the record that the practice in Multnomah County is to make a new appointment of counsel when a termination of parental rights petition is filed rather than to carry over an appointment of counsel made during a preceding portion of the dependency proceeding.

that to you or to the agency." The attorney responded, "He has chosen to indicate that to me in the past, and I think it's a foregone conclusion because I told him that they would file a termination." The court then ended the telephone conversation and permitted the state to present a *prima facie* case in father's absence that led to the judgment terminating father's parental rights.

■■ The threshold issue is whether the judgment terminating father's parental rights after father did not appear on January 19 is appealable under ORS 19.245, which provides, in part:

"(1) Except as provided in subsections (2) and (3) of this section, any party to a judgment may appeal from the judgment.

"(2) A party to a judgment given by confession or for want of an answer may not appeal from the judgment except as follows:

"(a) A plaintiff, third party plaintiff or a party who pleaded a cross-claim or counterclaim may appeal from the judgment if the judgment is not in accord with the relief demanded in the complaint.

"(b) A defendant may appeal from the judgment if the trial court has entered a default judgment against the defendant as a sanction or has denied a motion to set aside a default order or judgment.

"(c) A defendant may appeal from the judgment if it is void."

"There is no inherent right to appellate court review; the right to appeal springs from statute." *Henry and Henry*, 301 Or 185, 188, 721 P2d 430 (1986). ORS 19.245(2) bars an appeal of a judgment given for "want of an answer." Thus, the question is whether judgment in this case was given "for want of an answer" within the meaning of the statute. If it was, then we are required to dismiss father's appeal. The question presents an issue of statutory interpretation in which we must attempt to discern whether the legislature intended ORS 19.245(2) to apply to bar appeals from judgments terminating parental rights when the parent fails to appear.

The text and context of ORS 19.245(2) are straightforward. Subsection (1) of the statute provides that any party may appeal from a judgment except as provided in subsections (2) and (3) of the statute. Subsection (2) of the statute clearly provides that a litigant who does not "answer" a complaint "may not appeal" subject to the exceptions in paragraphs (2)(a) and (b), neither of which applies to the circumstances of this case. Also, when the Supreme Court interprets a statute, that interpretation becomes part of the statute as if it were written into the law at the time of enactment. *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995). ORS 19.245 and its predecessor statutes have been interpreted a number of times by the Supreme Court, but never, to our knowledge, under the circumstances presented by this case.[2]

Nonetheless, what the court has said in the past about the meaning of the statute helps to inform our analysis. For example, in discussing the import of ORS 19.245, the Supreme Court observed in *Russell* that it

"has developed a body of principles that serve to assure that every appeal presents, at every stage of appellate litigation, a genuine controversy for decision. * * * One of those principles is that a party waives the right to appeal a judgment to which that party has consented. In that circumstance, this court has declined to exercise appellate jurisdiction."

*Russell*, 324 Or at 451.

In support of the above pronouncement, the *Russell* court adhered to the "waiver-of-appeal" rule described in *Rader v. Barr*, 22 Or 495, 496, 29 P 889 (1892), a case in which the defendant consented to the entry of judgment but later sought to appeal. In dismissing the appeal of the defendant who had filed an answer in the trial court but thereafter appeared in court and consented that judgment be rendered against him for the amount demanded by the complaint, the Supreme Court explained:

---

[2] *See, e.g., Russell v. Sheahan*, 324 Or 445, 451, 927 P2d 591 (1996) (referring to the fact that there are at least 15 cases in Oregon that adhere to the waiver-of-appeal rule when a defendant consents explicitly or implicitly to the entry of judgment in the trial court).

"The reason of this rule is plain. Courts are held to try real controversies between parties; but consent ends all contention, and leaves nothing for the court to do but to see that the same is carried into effect."

*Id.* at 496.

Also, in *Whipple v. S. P. Co.*, 34 Or 370, 373, 55 P 975 (1899), a statute provided that, when an action in tort for damages was filed in justice court, the defendant, if no answer had been filed, was not precluded by reason of his default from appearing in court and offering evidence regarding the amount of damages that should be awarded and could appeal from the resultant judgment. In *Whipple*, the plaintiff sued the defendant to recover the sum of $50, the alleged value of a cow that had been struck and killed by the defendant's locomotive. The defendant, having been properly served, did not file an answer to the complaint, but appeared through an attorney at the time and place specified in the summons. The defendant did not, however, file any answer or pleading and his attorney did not make any oral statement in the justice court contesting the amount of damages or otherwise controverting the plaintiff's allegations. The justice court thereafter awarded judgment against the defendant in the amount of $50, but the defendant appealed to the circuit court seeking a *de novo* trial and moved to file a formal answer in that court. The circuit court denied the defendant's motion and dismissed the appeal from justice court. The defendant thereafter appealed from that judgment to the Supreme Court.

On appeal, the Supreme Court held that the circuit court properly dismissed the defendant's appeal. The court reasoned that, although the defendant was permitted to controvert the amount of damages without filing a formal answer,

"[t]his, however, must be done in the court in which the action was brought, for, under a statute like ours, which prohibits an appeal from a judgment rendered for want of an answer, the default is tantamount to a consent on the part of the defendant that such court shall assess the damages which are sought to be recovered, and that unless he offers proof in mitigation thereof, the judgment in this respect shall be final."

*Whipple*, 34 Or at 374-75.

■■     Our own jurisprudence has reasoned similarly. In *Gibbons and Gibbons*, 153 Or App 377, 381, 956 P2d 1069 (1998), we held that, under ORS 19.245(2), a judgment was not appealable where, in a dissolution proceeding, the husband appeared *pro se* at a show cause hearing but failed to file any pleading before the entry of an order of default. Thus, generally under ORS 19.245, a defendant waives the right to appeal when he fails to file a written answer, or if he fails to appear in court at the time and place stated in the summons in the event that the governing statutes provide for an appearance in court in lieu of a written answer. As the *Henry* court concluded, "[t]he legislative text barring appeals by one who has not filed an answer expresses a policy that a defendant cannot simply fail to appear and then appeal a judgment by default for asserted errors in the proceedings leading to the judgment." 301 Or at 191.

■     With that understanding of the import of ORS 19.245(2), we turn to the question of whether the legislature intended ORS 19.245(2) to be applicable to default judgments that terminate parental rights. ORS 419B.819 provides, in part:

"(2)   A summons under this section must require one of the following:

"(a)   That the parent appear personally before the court at the time and place specified in the summons for a hearing on the allegations of the petition;

"(b)   That the parent appear personally before the court at the time and place specified in the summons to admit or deny the allegations of the petition; or

"(c)   That the parent file a written answer to the petition within 30 days from the date on which the parent is served with the summons.

"* * * * *

"(7)   If a parent fails to appear for any hearing related to the petition, or fails to file a written answer, as directed by summons or court order under this section or ORS

419B.820, the court, without further notice and in the parent's absence may:

"(a)    Terminate the parent's rights[.]"

Not unlike the statutory scheme that existed in *Whipple*, the above statutes provide that a defendant in a termination of parental rights proceeding may file a written answer or respond to the petition by appearing at the time and place indicated by the summons. In that light, we perceive no barrier to concluding that the legislature intended ORS 19.245 to apply to judgments rendered under the statutes that govern the termination of parental rights. ORS 19.245 by its terms applies to all judgments without limitation or restriction. ORS 419A.205(1)(c) provides that, for purposes of appeal, a "final disposition of a petition" constitutes a "judgment." ORS 419B.500 provides that the parental rights of the parents of a ward of the court may be terminated upon the filing of a "petition." Unless there is an appeal, an order terminating the rights of the parent pursuant to such a petition "permanently terminates all rights of the parent * * * and the parent or parents have no standing to appear as such in any legal proceeding concerning the ward." ORS 419B.524. Indeed, the Supreme Court in *State ex rel SOSCF v. Stillman*, 333 Or 135, 138, 36 P3d 490 (2001), characterized an appeal from the termination of parental rights as "essentially an appeal from a suit in equity," and ORS 419A.200(6) provides that "[a]n appeal to the Court of Appeals must be conducted in the same manner as an appeal under ORS chapter 19," except that the court shall advance the appeal on the court's docket in the same manner as appeals in criminal cases and shall conduct a *de novo* review of the record.

To permit a defendant in a termination of parental rights proceeding to fail to appear at hearing and then to contest the judgment on appeal would be to offend the policy underlying ORS 19.245(2) as determined by the above-cited Supreme Court decisions. Father's failure to file an answer in this case or to appear at the time and place announced by the summons is tantamount to his consent that the court grant the relief requested by the petition. Once the state presented a *prima facie* case, his failure to contest that evidence left nothing for the trial court to adjudicate. He has therefore, in

effect, waived his right to appeal by leaving no issue in the case to be adjudicated.[3] Under the circumstances, ORS 19.245 compels us to dismiss his appeal for lack of an appealable judgment.[4]

Appeal dismissed for lack of appealable judgment.

---

[3] Father does not contend that the judgment terminating his parental rights was void for lack of personal service. Although it is possible that father's incarceration may have prevented him from personally appearing at the hearing, it is apparent from the record that he could have made an appearance through an attorney, had he sought to have one appointed for the termination proceeding, and could have sought to have the hearing continued, so that he could have appeared. The summons, in effect, informed him of that right. Indeed, the record demonstrates that father was aware that he could obtain an attorney at public expense to represent him, inasmuch as he had been represented by an appointed attorney during the dependency proceedings involving his children.

[4] Father's post-judgment remedy appears to have been to move to set aside the judgment under ORS 419B.923, which provides, in part:

"(1) Except as otherwise provided in this section, on motion and such notice and hearing as the court may direct, the court may modify or set aside any order or judgment made by it. Reasons for modifying or setting aside an order or judgment include, but are not limited to:

"* * * * *

"(b) Excusable neglect.

"* * * * *

"(7) A motion under subsection (1) of this section may be filed with and decided by the trial court during the time an appeal from a judgment is pending before an appellate court. The moving party shall serve a copy of the motion on the appellate court. The moving party shall file a copy of the trial court's order or judgment in the appellate court within seven days of the date of the trial court order or judgment. Any necessary modification of the appeal required by the court order or judgment must be pursuant to rule of the appellate court."